IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ERNEST EUGENE CARR                                                    PLAINTIFF

        v.                          Civil No. 09-5213

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                        DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Ernest Carr, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**    **Procedural Background**

The plaintiff filed his applications for DIB and SSI on June 20, 2005, alleging an onset date of May 17, 2005, due to numbness in his right hand and arm and on the right side of his face. Tr. 56-57, 67-68, 70-72, 85-86, 95-101. His applications were denied initially and on reconsideration. Tr. 10. Plaintiff then made a request for a hearing by an Administrative Law Judge (ALJ). An administrative hearing was held on March 6, 2007. Tr. 218-255. Plaintiff was present and represented by counsel.

At this time, plaintiff was 50 years of age and possessed a tenth grade education. Tr. 63, 72, 223, 224. He had past relevant work ("PRW") experience as a tree trimmer and a tree trimmer foreman. Tr. 58, 68, 225-228.

On June 20, 2007, the ALJ found that plaintiff's diabetes mellitus, degenerative disk disease in the lumbar spine, hypertension, osteoarthritis, left foot drop, and gout one to two times per year were severe but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 12-13. After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff maintained the residual functional capacity ("RFC") to perform a wide range of light work subject to an ability to stand and/or walk for a total of six hours in an eight-hour workday; and sit for a total of six hours in an eight-hour workday. The ALJ concluded that plaintiff could not drive due to his medications, and his left foot drop prevented him from using ladder, scaffolds, or ropes and walking on uneven surfaces. He was also unable to work at unprotected heights or with dangerous machinery; needed to avoid extremes of temperature and wetness; and, could only occasionally climb ramps and stairs, stoop, bend, crouch, crawl, kneel, and balance. Tr. 13-15. Due to pain, fatigue, and medication side effects, plaintiff was also limited to simple, non-complex work, involving little judgment, few variables, and tasks learned by rote with direct and concrete supervision. With the assistance of a vocational expert, the ALJ found plaintiff could perform work as a bench assembler and cashier. Tr. 15-16.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on July 26, 2009. Tr. 3-6. Subsequently, plaintiff filed this action. ECF No. 1. This case

is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 8, 9.

## II. **Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3),

1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

### A. The Evaluation Process:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

Of particular concern to the undersigned is the ALJ's failure to properly consider plaintiff's diagnosis of peroneal neuropathy (foot drop) when determining his residual functional capacity. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; Eichelberger v. Barnhart*, 390 F.3d 584,

4

591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In mid-July 2003, Plaintiff was hospitalized after a work accident wherein he sustained a cervical injury. Tr. 135-141, 207. While in the hospital, he was also found to be suffering from diabetes mellitus and hypertension. Tr. 135-141, 207. Dr. Waqar Mehal concluded that plaintiff's chest pain was likely secondary to his high blood pressure, but stated that it would require further work-up once plaintiff's blood pressure was stabilized. Tr. 140. He advised plaintiff to maintain a low salt diet and to stop smoking. Dr. Mehal also referred him to the diabetes center for teaching. Tr. 140-141.

On November 29, 2003, Plaintiff was treated at the hospital for hypertension and right-sided numbness. Tr. 107-109, 113-125, 192-194. Dr. Byron Garibaldi diagnosed Plaintiff with poorly controlled hypertension and prescribed Clonidine and Lotrel. Tr. 123.

On November 30, 2003, Plaintiff returned to the hospital with right-sided numbness in the arm and face and right-sided facial weakness. Tr. 107. Dr. Martinson diagnosed Plaintiff with a history of type 2 diabetes and hypertension with symptoms of right facial and arm numbness. Tr. 107, 109. It was noted that repeated carotid ultrasounds revealed no evidence of a high grade hemodynamic stenosis and chest x-rays were negative revealing no active chest

disease. Tr. 113, 125. A CT scan of his brain was also unrevealing. Tr. 192. Dr. Wilson Bernales also evaluated Plaintiff and diagnosed him with a probable small vessel ischemic event, likely in the subcortical distribution, diabetes, diabetic neuropathy with renal insufficiency, joint effusion with uric acid crystals, hypertension, history of tobacco abuse, history of polysubstance abuse (heroin, cocaine, marijuana), and history of alcohol abuse. Tr. 110. He recommended a low salt, low fat diet, activities as tolerated and the cessation of Indomethacin and Hydrchlorothiazide at that time. Tr. 111.

On December 5, 2003, Plaintiff was treated for a transient ischemic attack versus a cerebrovascular accident. Tr. 110-112, 133. He again reported numbness and tingling in the right side of his face and right arm and hand. Tr. 133. He was also experiencing numbness and tingling in his lower right leg. Tr. 133. Ultimately, Dr. Mehal diagnosed him with a transient ischemic attack and essential hypertension with improved control. Tr. 133.

Plaintiff continued to report numbness in the right side of his face, mainly his cheek and over to his lips and his right arm continued to feel tingly and asleep all of the time from his elbow down. Tr. 131. He also experienced problems with his big great toe on his right foot feeling like it was asleep. In January 2004, Dr. Mehal assessed him with neuropathy secondary to cerebrovascular accident versus diabetes mellitus, degenerative joint disease of the right knee, diabetes, and hepatitis C. Tr. 132.

On February 16, 2004, records indicate Plaintiff was still experiencing numbness on his right side. Tr. 130. Dr. Mehal reiterated his assessment of diabetes and hypertension and ordered a basic metabolic panel and a follow-up in six weeks. Tr 131.

On May 20, 2005, Plaintiff sought emergency treatment for sciatica. Tr. 181-188. Plaintiff reported left thigh pain and numbness from the lateral calf down into the top of the foot. An examination revealed a decreased ability to dorsiflex the foot. A CT scan of his lumbar spine revealed a left paracentral disk protrusion present at the L5-S1 causing slight compression of the exiting L5 nerve roots. Plaintiff was administered Demerol and Phenergan injections. Tr. 181-188.

On June 5, 2005, Plaintiff was treated in the emergency room for severe, chronic back pain. Tr. 172-179. Although he reported a previous back injury, he indicated that he had also recently injured his back while lifting. The doctor noted a decreased range of motion, muscle spasm, and CVA tenderness. Plaintiff was administered Phenergan and Morphine via IV. Tr. 172-179.

On June 22, 2005, Dr. Michael Morse preformed nerve conduction velocity testing. Tr. 189-192, 205-206. The results revealed an absent left peroneal response with a normal tibial response with the exception of a diminished motor unit action potential. Plaintiff had active denervation in his anterior tibialis muscle (shin) and some chronic denervation of the posterior tibialis muscle. Dr. Morse found this to be most consistent with peroneal neuropathy and superimposed L5 radiculopathy. Tr. 189-192.

An MRI of Plaintiff's lumbosacral plexus performed on July 29, 2005, revealed a slightly heterogenous enhancing mass in the posterior left ilium which abutted the left sacroiliac joint worrisome for neoplastic process primary versus secondary. Tr. 208. A correlation with plain films was recommended, as was dedicated magnetic resonance imaging of the pelvis to include pre and post contrast T1 and weighted images. Tr. 208.

On June 16, 2006, when Plaintiff participated in a face-to-face interview with a representative of the Administration, the interviewer noted plaintiff experienced difficulty with sitting, standing, and walking. Tr. 75. In the notes that followed, the interviewer explained that Plaintiff had a hard time standing and moving. He seemed to drag his left leg and became uncomfortable sitting during the interview. Tr. 75-76.

At the administrative hearing, plaintiff testified that he had a drop in his left foot. Tr. 240. He explained that he had to fling his left foot when he walked because he could not bend his toes or flex his foot. Tr. 240. Plaintiff stated that this also resulted in pain, as the nerves in his foot were very sensitive. Tr. 240. For this, he had been prescribed Hydrocodone. Tr. 241.

Given the fact that objective testing did confirm that Plaintiff was suffering from peroneal neuropathy as well as superimposed L5 radiculopathy, we believe the ALJ erred in concluding that Plaintiff could stand and/or walk for 6 hours out of an 8-hour workday and occasionally climb ramps and stairs, stoop, bend, crouch, crawl, kneel, and balance. By definition, foot drop is a neurological condition that makes it difficult for a person to lift their foot off the ground. *See* Mayo Foundation for Medical Education and Research, Foot Drop, *at* http://www.mayoclinic.com/health/foot-drop/DS01031. Symptoms of foot drop include difficulty lifting the front part of the foot; dragging the foot on the floor when walking; slapping your foot down onto the floor with each step; raising the thigh when walking as if you were climbing stairs; and pain, weakness, or numbness in the foot. *Id*. The ALJ merely mentioned plaintiff's diagnosis, however, it is clear from the personal observation of an interviewer at the Agency that plaintiff seemed to drag his left leg. Tr. 75-76. *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (holding that the ALJ is not free to ignore medical evidence, rather must consider

the whole record). As such, we find that remand is necessary to allow the ALJ to reconsider plaintiff's ability to stand and walk, as well as perform other exertional activities requiring the use of his feet.

**IV.   Conclusion**:

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 30th day of September 2010.

/s/ J. Marschewski
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)